## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **VONDELL BUSH,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **vs.** | **)** | **Case No. 3:22-cv-00522-GCS** |
| | **)** | |
| **VIPIN K. SHAH,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |
| | **)** | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. 61). Defendant Vipin Shah ("Shah") filed the Motion along with a Memorandum in Support on January 8, 2024. (Doc. 61, 62). Plaintiff Vondell Bush filed a Memorandum in Response to Defendant's Motion for Summary Judgment on March 11, 2024. (Doc. 77). For the reasons delineated below, Defendant's Motion for Summary Judgment (Doc. 61) is **GRANTED**.

### PROCEDURAL BACKGROUND

Plaintiff, an inmate of the Illinois Department of Corrections ("IDOC"), housed at Western Illinois Correctional Center ("Western") brings this action pursuant to 42 U.S.C. §1983 for deprivations of his constitutional rights while he was at Lawrence Correctional Center. (Doc. 1). Plaintiff alleges that medical staff were deliberately indifferent in diagnosing and treating his torn anterior cruciate ligament ("ACL"), in violation of the Eighth Amendment. Plaintiff seeks monetary damages.

On May 16, 2022, the Court conducted its preliminary review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A. (Doc. 8). Based on the allegations in Plaintiff's Complaint, the Court designated the following count:

> **Count 1:** Eighth Amendment deliberate indifference claim against Dr. Shah, Rob Jeffreys, and John Doe Warden/CAO at Lawrence for failing to properly diagnose and treat Bush's torn ACL.

*Id.* at p. 6. However, the Court determined that Plaintiff's Complaint against Jeffreys and the John Doe Warden/CAO failed to state a viable claim, as Plaintiff only alleged that these individuals denied his grievances. *Id.* at p. 3. Accordingly, Plaintiff's claim was only permitted to proceed against Defendant Shah. *Id.* at p. 4.

Pursuant to the Initial Scheduling Order, Defendant was directed to file his Dispositive Motion on the Issue of Exhaustion Administrative Remedies by October 19, 2022. (Doc. 16). Defendant Shah failed to do so, and the Court entered a Merits Based Scheduling Order on November 21, 2022, which included a dispositive motion deadline of October 23, 2023. (Doc. 28).

### FACTUAL BACKGROUND

On January 6, 2020, Plaintiff was first seen for complaints of knee pain at a Nurse Sick Call while housed at Lawrence. (Doc. 62, Exh. 1, p. 4). Plaintiff communicated to the LPN that his knee injury had occurred years ago while playing sports. *Id.* The only range of motion restriction noted by the LPN was Plaintiff's ability to pivot. *Id.* Otherwise, the LPN did not find any indications of swelling or discoloration of the skin. *Id.* To address Plaintiff's pain, the LPN proscribed Plaintiff 200 mg of Ibuprofen to be taken one to two tablets at a time, three times a day, as needed. *Id.* The LPN also referred Plaintiff to be

seen by a doctor. *Id.*

Plaintiff first saw non-party, Dr. Lynn Pittman, regarding complaints of left knee pain on January 29, 2020. (Doc. 62, Exh. 1, p. 5). Plaintiff self-reported to Dr. Pittman that he had a torn ACL in his left knee. *Id.* ("Inmate states he has a torn L ACL . . ."). Plaintiff claims that Dr. Pittman not only assessed his abdomen following an inguinal hernia repair at this appointment, but also that she performed a "drawer test" exam of his left knee. *Id.; see also* (Doc. 77, p. 2). Dr. Pittman noted that Plaintiff needed a follow-up appointment for referred pelvic pain, for an x-ray then MRI on his left knee, and for his labs to be re-checked. *Id.* In her treatment plan, Pittman only ordered an x-ray of Plaintiff's knee and did not order an MRI. *Id.*

On January 31, 2020, Plaintiff's left knee was x-rayed. (Doc. 62, Exh. 1, p. 6). On February 4, 2020, Dr. S. Chandrasekar reviewed Plaintiff's x-ray and reported the following findings: "Ligamentous injury is difficult to diagnose on radiographs, however, there is no evidence of a Segond fracture. There are no secondary signs of ACL tear such as deepening of the lateral condylar sulcus. No significant degenerative change identified. No acute fracture or dislocation. Anatomic patellar position. No knee joint effusion." (Doc. 62, Exh. 1, p. 11).

Defendant Shah first saw Plaintiff on February 17, 2020. (Doc. 62, Exh. 1, p. 7). However, this appointment concerned Plaintiff's prior abdominal surgery that he had received on September 29, 2019. *Id.* The medical records do not indicate that Plaintiff's ACL was discussed.

On April 9, 2020, Plaintiff was once again seen by non-party Dr. Pittman (Doc. 62,

Exh. 1, p. 8). Dr. Pittman indicated that Plaintiff had a left ACL tear from 2006 and that no surgery was performed prior to his incarceration. (Doc. 62, Exh. 1, p. 8). She also noted that Plaintiff "uses [an] ACE Wrap" for his left knee. *Id.* She also wrote "[r]equest MRI approval to grade tear" in the subjective/objective assessment section of her encounter note with Plaintiff. *Id.* In the treatment plan section of the note, Dr. Pittman prescribed Plaintiff with 800 mg of Ibuprofen to Plaintiff for six months. *Id.*

On November 10, 2020, Defendant Dr. Shah first saw Plaintiff for his complaints of a torn ACL. (Doc. 62, Exh. 1, p. 9). Plaintiff reported to Dr. Shah that he had first injured his knee in 2006, but he had reinjured it playing basketball in 2013. (Doc. 77, p. 3). During the appointment, Shah claims that he observed Plaintiff's range of motion when walking, standing, and sitting into and standing up from a chair. (Doc. 62, Exh. 3, p. 5). Shah reports that he found that Plaintiff did not have any limited range of motion or indicia of pain during movement. *Id.* Shah also claims that he tested the mobility of Plaintiff's knee by moving his lower leg to determine if tendons in the knee were properly restraining its mobility. *Id.* Shah reportedly found no excessive mobility of the knee. *Id.* Based on the exam and Plaintiff's January 31, 2020, x-ray, Shah determined that there was no medical need for an MRI or low bunk permit. *Id.*

Plaintiff claims the November 10, 2020, exam went differently. (Doc. 77, p. 8). Plaintiff concedes that Defendant Shah questioned him about how his knee injury occurred, where he had the injury previously treated, and why he did not have surgery on his knee before he was incarcerated. *Id.* at p. 7. However, Plaintiff asserts that Dr. Shah did not perform the physical exam of his knee as described and merely touched his knee

while he was seated. *Id.* at p. 8. He also claims that Shah failed to "heed the prior physician's [Dr. Pittman's] exam results." *Id.* Plaintiff did not return to health care to see Shah again because he found his care to be "upsetting and unprofessional." *Id.* at p. 8.

On or around June 21, 2021, Plaintiff was transferred from Lawrence to Robinson Correctional Center ("Robinson") and was no longer under Defendant Shah's care. (Doc. 62, Exh. 1, p. 10). On July 19, 2021, Plaintiff was examined by non-defendant Dr. David Poor. (Doc. 77, p. 24). Plaintiff claims that Dr. Poor performed a drawer test of his knee as Dr. Pittman did back at Lawrence. *Id.* Upon exam, Dr. Poor provided Plaintiff with a low bunk permit for one year. *Id.* at p. 22. Written in the bottom left corner of the Special Needs permit is "L[eft] ACL tear, mobility, falls." *Id.* On July 22, 2021, Plaintiff was authorized to receive an MRI for his left knee. *Id.* at p. 23. On November 17, 2021, Dr. Poor had a follow-up appointment with Plaintiff to discuss the results of his MRI. *Id.* at p. 25. Plaintiff was ultimately referred to an orthopedic surgeon for surgical repair of his ACL and was also provided with 400 mg of Ibuprofen for three months to address his pain. *Id.*

## LEGAL STANDARDS

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Santaella v. Metropolitan Life Ins.*

*Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See also Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009) (stating that "we are not required to draw every conceivable inference from the record . . . we draw only reasonable inferences") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in factfinding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Walker v. Shansky*, 28 F.3d 666, 670–671 (7th Cir. 1994), aff'd, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere speculation or conjecture will not suffice." *Trade Finance Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (internal citation

omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (internal citation omitted).

D<small>ISCUSSION</small>

Defendant Shah argues that he exercised his own professional judgment when he declined to order an MRI of Plaintiff's left knee or to provide Plaintiff with a lower bunk permit in response to his allegations that he suffered from an ACL tear in his left knee. Moreover, Defendant argues that he was not obligated to follow the treatment plan developed by Dr. Pittman for Plaintiff's knee pain as he is a qualified medical professional who made determinations about Plaintiff's care for identifiable medical reasons. (Doc. 62, p. 9). Plaintiff contests Defendant's position. (Doc. 77). Plaintiff asserts that Defendant Shah's care amounts to deliberate indifference because he failed to conduct a thorough physical examination of his knee or order further diagnostic tests to show that his complaints were justified. *Id.* at p. 8 (citing *McKenna v. Wright*, 386 F.3d 432, 437 (2nd Cir. 2004)). Because reasonable medical minds may have disagreed, given the evidence of Plaintiff's presenting condition, the Court cannot find that Defendant Shah acted with deliberate indifference while treating Plaintiff's knee.

To prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must prove that he suffered from an objectively serious medical condition and that prison

officials were deliberately indifferent to that condition. *See, e.g.*, *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). Here, Defendant Shah does not dispute that Plaintiff's alleged ACL tear was an objectively serious medical condition. *See (*Doc. 62, p. 9-13). Rather, Defendant's arguments are focused on whether his treatment plan was an appropriate exercise of professional judgment. Therefore, the only question the Court will consider is whether the evidence, when viewed in the light most favorable to Plaintiff, establishes an issue of fact as to whether Defendant Shah acted with deliberate indifference.

"A prison official is deliberately indifferent only if he 'knows of and disregards and excessive risk to inmate health or safety.'" *Whiting*, 839 F.3d at 662 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The inquiry is subjective and requires that the official "must know of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference.'" *Id.* (citing *Farmer*, 511 U.S. at 837). Deliberate indifference "requires more than negligence and it approaches intentional wrongdoing." *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). *See also Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir 2005) (stating that "neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference.").

When assessing claims of deliberate indifference against a medical professional, the "professional judgment standard" applies. *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998); *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Under this standard, a medical professional is entitled to deference in treatment decisions unless no

minimally competent professional would have so responded under the circumstances. *See Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011); *Sain v. Wood*, 512 F.3d 886, 894-895 (7th Cir. 2008). A medical professional may only be held to have displayed deliberate indifference if "the decision by the professional is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible did not base the decision on such judgment." *Sain*, 512, F.3d at 895. The decision must be such a departure from established practice and judgment as to demonstrate "a complete abandonment of medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

Here, Dr. Shah clearly acted within the bounds of acceptable professional judgment when caring for Plaintiff. Although Bush's physical exam may not have been as comprehensive as he would have liked, Plaintiff concedes that Dr. Shah did examine his knee and asked him several questions about his symptoms. (Doc. 77, p. 8). Shah also reviewed the January 31, 2020, x-ray of Plaintiff's knee. Shah explained the results of the x-ray report prepared by Dr. S. Chandrasekar, which showed no signs of an ACL tear in Plaintiff's left knee. Simply because Dr. Shah chose to act more conservatively based on the medical evidence available to him, than perhaps Dr. Pittman would have had she continued to provide Plaintiff care, does not mean that Shah exhibited deliberate indifference. Rather, Shah developed an alternative treatment plan based on his knowledge, skills, experience, and training, and he determined that there was no medical need for an MRI or low bunk permit at that time.

CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc 61). The Court **FINDS** in favor of Defendant Vipin Shah and against Plaintiff Vondell Bush. Further, the Clerk of Court is **DIRECTED** to enter judgment and close the case.

In an abundance of caution, and noting Plaintiff's *pro se* status, the Court advises Plaintiff as follows. Plaintiff has two means of contesting this order: (1) he may request this Court review this order; or (2) he may appeal the order to the Seventh Circuit Court of Appeals.

If Plaintiff chooses to request this Court to review this order, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). Plaintiff must file the motion within twenty-eight (28) days of the entry of judgment; the deadline cannot be extended. *See* FED. R. CIV. PROC. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *See Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) (stating that a party must establish either manifest error of law or fact, or that newly discovered evidence precluded entry of judgment to prevail on a Rule 59(e) motion) (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be tolled. *See* FED. R. APP. PROC. 4(a)(4). The

clock will start anew once the undersigned rules on the Rule 59(e) motion. *See* FED. R. APP. PROC. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). However, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not toll the time for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819–820 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.

Alternatively, if Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal from the entry of judgment or order appealed from within 30 days. *See* FED. R. APP. PROC. 4(a)(1)(A) (emphasis added). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. *See* FED. R. APP. PROC. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State University*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

Plaintiff may appeal to the Seventh Circuit by filing a notice of appeal in this Court. *See* FED. R. APP. PROC. 3(a). The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing fee is due at the time the notice of appeal is filed. *See* FED. R. APP. PROC. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion"). *See* FED. R. APP. PROC. 24(a)(1). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. PROC. 24(a)(1)(C). If Plaintiff is allowed to proceed IFP on appeal, he will be assessed

an initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1). He will then be required to make

monthly payments until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2).

     **IT IS SO ORDERED.**

     **DATED:  September 13, 2024.**

Digitally signed by
Judge Sison
Date: 2024.09.13
14:12:23 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**